Fumad, J.
This is an action in contract and tort to recover damages arising out of the plaintiffs purchase of a residential condominium.
The claim of plaintiff (“Buyer”) against defendant Ann Rosenberg (“Seller") was for her alleged breach of contract in refusing to provide mortgage financing to the Buyer in the sale of her condominium as purportedly required by Rider A to the parties’ purchase and sale agreement. The Buyer’s claim against defendant Lenard Zide (“Zide”), the Rosenbergs’ attorney, is for his alleged interference with the contractual and advantageous relationship with respect to financing that existed between the Buyer and Zide’s client, the Seller.
The present appeal was prosecuted by the Buyer on a charge of error in the trial court’s entry of a Dist/Mun. Cts. R. Civ. R, Rule 56 summary judgment for defendant Zide.
The primary issue raised by this appeal is whether a lawyer should be held liable in tort to his client’s adversary, the buyer, for the lawyer’s acts and conduct in representing his client, the seller in a real estate transaction.
The material facts are largely undisputed in this case. In 1988, Buyer’s counsel prepared a written agreement for the purchase of the Seller’s condominium. The Buyer’s draft included, as “Rider A,” a mortgage contingency clause permitting the Buyer to terminate the contract if he were unable to obtain a specified mortgage at prevailing rates. On July 9, 1988, the parties and the broker met to execute the purchase and sale agreement drafted by buyer’s counsel. Defendant William Rosenberg, the Seller’s husband, strenuously objected to Rider A, and the parties then agreed to delete the Buyer’s proposed language and to substitute the following: “Seller agrees to provide mortgage in lieu of bank financing at 12% plus current points provided there is no way buyer can possibly obtain a mortgage elsewhere.” The contract was then signed by both parties.
One month later, on August 9,1988, the Buyer informed the Rosenbergs that he could not obtain a 12% mortgage, and requested that they provide such financing. It was at this point that the Rosenbergs first retained defendant Zide to serve as their lawyer in this transaction with the Buyer who had at all times been represented by legal counsel. Subsequent to August 9,1988, all negotiations as to the terms and conditions of the parties’ agreement were conducted by the lawyers for each side.
The conduct of defendant Zide which the Buyer now claims to be tortious consisted of the following: (1) Zide stated that the Buyer would be responsible for his legal fees whether the transaction was completed or not Buyer’s counsel accepted this proposal, agreeing that the Buyer would pay $2,000.00 for Zide’s drafting of closing *130 papers, unless the sale was not consummated due to the Seller’s default. (2) Zide initially refused to accept the Buyer’s personal check for $31,500.00, the second half of the deposit, on the day it was due, and demanded a cashier’s check. The personal check was ultimately accepted at the insistence of Buyer’s counsel. (3) Zide demanded to see the Buyer’s tax returns in connection with his client’s prospective role as mortgagor. (4) Zide intimated that the Buyer might require a mortgage cosigner in view of the broker’s representations that the Buyer had overstated his income to the Rosenbergs, which the Buyer denied. (5) Zide negotiated certain new conditions for financing by the Seller, including a buyer’s loss of equity provision, which proposal was later withdrawn by Zide because it was against public policy, and a lease-purchase option in lieu of the parties’ purchase and sale agreement, which the Buyer rejected. (6) On the day of the closing, Zide refused to proceed until he received the fee the Buyer had agreed to pay. The Buyer tendered payment on advice of counsel to protect his $63,000.00 deposit
No other specific acts or conduct are alleged by the Buyer in support of his claim against Zide. The complaint alleges generally:
on a number of occasions, Defendant Zide made demands on plaintiff which were not part of the agreement... Zide and Rosenberg tried to force plaintiff to accept changes in the terms of the agreement.... When plaintiff refused... Zide advised plaintiff that if he did not accept changes his clients would walk away from the deal and retain liquidated damages.
The Rosenbergs ultimately refused to provide financing, and the Buyer then obtained a $250,000.00 mortgage at 14.36% from the Community Cooperative Bank of Medford.
It is undisputed that at all times defendant Zide acted as the Rosenbergs’ attorney.
1. Liability in tort for intentional interference with the contractual or advantageous relationship of another may be imposed upon one who intentionally and improperly interferes with the performance of a contract, or the continuation of a business relationship, between the plaintiff and a third person which directly results in pecuniary loss to the plaintiff. See, generally, Chemawa Country Golf, Inc. v. Wnuk, 9 Mass. App. Ct. 506, 509 (1980); RESTATEMENT (SECOND) OF TORTS, §766 (1977). It is incumbent upon the plaintiff to demonstrate not only that the alleged interference was intentional or purposeful, but also that the defendant “had a duty of non-interference; i.e., that he interfered for an improper purpose rather than for a legitimate one, or that defendant used improper means which resulted in injury to plaintiff.” United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 816, n.8 (1990), quoting from Straube v. Larson, 287 Or. 357, 361 (1979).
Viewing all facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, Coveney v. President & Trustees of Holy Cross College, 388 Mass. 16, 17 (1983), it is unequivocally clear that defendant Zide’s legal representation of the Seller did not constitute interference in the parties’ transaction for an “improper purpose” or by “improper means.” As the plaintiff-Buyer has failed to advance any evidence which would either reasonably support a finding in his favor on, or at least raise a factual issue as to, this critical element of his tort claim against Zide, Zide was entitled to summary judgment in his favor as a matter of law. Richey v. American Auto Ass’n, Inc., 380 Mass. 835, 838 (1980).
2. A lawyer’s principal duty is to represent his “client zealously within the bounds of the law.” Commonwealth v. Michel, 381 Mass. 447, 456 (1980). Zide, as Seller’s counsel, could not logically be charged by the Buyer with a “duty of non-interference” in the parties’ transaction. In acting on behalf of the Rosenbergs in a capacity restricted to Seller’s legal counsel, Zide acted in fulfillment of a professional duty and not for an improper puipose.
The Buyer argues, in merely conclusory terms, that Zide proceeded improperly because he “did nothing to foster the performance of the mortgage provision but, rather, did everything possible to hinder plaintiff from obtaining the benefit of the bargain.” Zide was, however, under no duty to promote or safeguard the plaintiff- *131 Buyer’s best interests. Indeed, the recognition or creation of:
a duty in favor of an adversary of the attorney’s client would create an unacceptable conflict of interest which would seriously hamper an attorney’s effectiveness as counselfor his client, [citationsomitted] ...Thenatureofthe adversary system precludes an adverse party from relying on his opposing party’s attorney.
Beecy v. Pucciarelli, 387 Mass. 589, 597 (1982) (claim for professional negligence against attorney by his client’s adversary held inactionable).
Similarly, there is no merit to the Buyer’s related argument that he relied upon Zide’s professional obligation to advise the Seller to honor her contractual commitment, and that Zide’s failure to do so was improper, subjecting him to liability to the Buyer. In support of this contention, the Buyer cites inapposite dicta in Page v. Frazier, 388 Mass. 55 (1983), wherein the Court actually held that the plaintiff-mortgagors could not recover against the mortgagee-Bank’s attorney for negligent misrepresentation. It was stated that there could be no justifiable reliance by a non-client creating an implied contract with an adversary’s attorney where the attorney clearly had an “independent and potentially conflicting duty to a client.” Id at p.63. The Buyer’s contention that he justifiably relied upon the Seller’s attorney, when he was at all times represented by his own lawyer, does not merit discussion.
3. The Buyer’s sole remaining argument is that Zide’s “acts and conduct were extreme and outrageous, and clearly outside the scope of any privilege.” Such bald assertions, unsubstantiated allegations or conclusory statements are insufficient to defeat a well-pleaded motion for summary judgment. First Nat’l Bk. of Boston v. Slade, 379 Mass. 243, 246 (1979); Key Capital Corp. v. M & S Liquidating Corp., 27 Mass. App. Ct. 721, 728 (1989). Second, the Buyer’s failure to demonstrate that Zide’s conduct was improper rendered immaterial any consideration of the affirmative defense of privilege.
No question of privilege arises unless the interference would be wrongful but for the privilege; it becomes an issue only if the acts charged would be tortious on the part of an unprivileged defendant
United Truck Leasing Corp. v. Geltman, supra at 811.
In any event, it is evident that Zide was privileged to act in the context of the parties’ transaction. The purpose of imposing liability on those who interfere with the contractual relationships of others is to protect the recognized interest in such relationships against forms of interference which the law finds repugnant. The question of justification rests, therefore, on whether protection of the contractual interest merits prohibition of the particular conduct which interferes with that interest. Savage v. Couri, 77 Ill. 2d 173 (1979). Under certain circumstances, a third party may be privileged purposely to bring about a breach of contract between other parties. The privilege arises when the third party protects a conflicting interest which is considered to be of equal or greater value than that accorded the contractual rights involved. Connaughton v. Gertz, 94 Ill App. 3d 265 (1981). See, e.g., Gram v. Liberty Mut. Ins. Co., 384 Mass. 659 (1981) (supervisors privileged in interference with subordinate’s employment contract because acting within scope of their employment responsibilities); Steranko v. Inforex, Inc., 5 Mass. App. Ct. 253 (1977) (corporate officer’s action within scope of corporate duties was privileged).
The fiduciary duty owed by an attorney to his client is such an interest Zide was privileged to act on behalf of the Rosenbergs and to counsel them regardless of whether his actions and advice were consistently correct or appropriate. Although incorrect advice as to a client’s contractual obligations might render a client liable to third parties, it does not follow that the attorney would also be liable. To impose such liability would have the undesirable effect of creating a duty to third parties which would take precedence over an attorney’s fiduciary duty to his client Public policy requires that an attorney, when acting in a professional capacity, remain free to advise *132 a client without fear of personal liability to the client’s adversaries.
4. There being no error, the trial court’s entry of summary judgment for defendant Zide is hereby affirmed. Report dismissed.